## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| JAMES W. COBB and SHERYL D. COBB, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:07-00280 |
| ) | |
| RAMEY MOTORS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants, Ramey Motors, Inc., B & R Enterprises, Inc., and James C. Ramey, Sr.'s Motion to Quash Subpoena on Tetrick & Bartlett, PLLC and Memorandum of Law in Support. (Document Nos. 104-05.) Tetrick & Bartlett is not a party to the instant action but is the outside certified public accounting and consulting firm for Defendant Ramey Motors, Inc., and prepares all of Defendants' financial information. (Document No. 105 at 5.) In their Motion, Defendants seek to prohibit the production of 12-month end of year statements and 3 month statements for Ramey Motors, Inc., from 2007-2013, as requested in the Subpoena served by Plaintiffs on July 17, 2014, upon Tetrick & Bartlett. (Id.) Defendants contend that the information contains trade secrets, commercial information, and confidential information which should not be disclosed, and is intended to be used in a manner that will produce prejudicial bias against Defendants. (Document No. 104 at 5-7.) Defendants further contend that Plaintiffs should have filed a motion to compel as the information initially was requested from and objected to by Defendants in discovery. (Id. at 8-9.) In response to Defendants' Motion, Plaintiffs assert that the requested material is relevant to their claim for damages and that the information can be produced pursuant to the previously agreed upon Protective Order. (Document No. 110.)

This action concerns an asset purchase agreement entered into on November 1, 2006, between Plaintiffs and Defendant James C. Ramey, Sr., president of Ramey Motors, Inc. and B&R Enterprises, Inc., in which Plaintiffs were to purchase two of Defendants' automobile dealerships, a Chrysler dealership and a Toyota dealership. (Document No. 1 at 10-14.) The parties agreed to close the sale thirty days after Plaintiffs received (1) approval from Toyota Motor Sales and Daimler Chrysler Corporation of Plaintiffs' assumption of the dealerships and (2) approval of bank financing for the purchase of the two dealerships. (Id. at 11.) Plaintiffs agreed promptly to take the action necessary to secure these approvals and Defendants agreed to cooperate fully with Plaintiffs to obtain the franchises. (Id.) Plaintiffs agreed to pay the purchase price of $8,000,000.00, and paid a $10,000.00 non-refundable down payment which was to be credited toward the purchase price upon execution of the agreement. (Id. at 11-12.)

Plaintiffs allege in their Complaint that they took the necessary action to obtain financing for the purchase of the two dealerships, and had obtained financing as of March 19, 2007. (Document No. 1 at 3-4.) Plaintiffs took additional steps to secure Toyota's and Daimler Chrysler's approval of their assumption of Defendants' dealerships, and on March 29, 2007, Plaintiffs assert that without warning, Defendants wrote to Plaintiffs and rescinded their offer to sell their two dealerships pursuant to the terms of the Agreement. (Id. at 4-5.) Upon receipt of the letter, Plaintiff James W. Cobb contacted Defendant James W. Ramey, Sr., who advised that he would continue to honor his obligations under the Agreement. (Id. at 5-6.) Plaintiffs assert that on April 2, 2007, however, that Defendant Mr. Ramey again rescinded the Agreement. (Id. at 6.)

Plaintiffs filed their Complaint on May 4, 2007, seeking specific performance of the Asset Agreement and damages for breach of contract. (Document No. 1.) On May 2, 2007, Defendants

filed a Complaint in the Circuit Court of Mercer County seeking declaratory judgment against Plaintiffs. (Document No. 1, Civil Action No. 1:07-cv-00378). That matter was removed to this Court on June 11, 2007, and this Court consolidated the two cases by Order entered July 26, 2007. (Document Nos. 1 and 9.) By Memorandum Opinion and Order entered October 27, 2014, Senior District Judge Faber denied the parties' Motions for Summary Judgment. (Document No. 115.)

As a threshold matter, the Court notes that Defendants have standing to object to the subpoena served on Tetrick & Bartlett, PLLC. "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." U.S v. Idea, 118 Fed.Appx. 740, 744 (4th Cir. Jan. 4, 2005); see also, Singletary v. Sterling Transport Co., Inc., 289 F.R.D. 237, 239 (E.D.Va. 2012). Although the subpoena is directed to Tetrick & Bartlett, PLLC, Defendants clearly have demonstrated that they have a personal right to their financial documents, and therefore, possess the right to move to quash or modify the subpoena served on Tetrick & Bartlett requesting those documents.

Addressing the merits of the Motion, Defendants assert that the requested documents are not relevant beyond their use in valuation of the "lost bargain amounts" by Plaintiffs' economic expert, Dan Selby. (Document No. 105 at 9.) To the extent Plaintiffs request the documents for use by Mr. Selby, Defendants assert that they would be unfairly prejudiced if Plaintiffs were able to submit a new expert report one month prior to trial and that Plaintiffs have waived their right to request the documents and amend Mr. Selby's report with trial only one month away. (Id. at 9-10.) Defendants assert that Mr. Selby completed his expert report on December 30, 2012, but Plaintiffs did not request the additional financial documents until July 17, 2014. (Id. at 9.) Defendants assert that if

3

Plaintiffs were permitted to produce a new expert report approximately one month before trial, presently scheduled on January 6, 2015, "Defendant would likely not have time to amend its expert economic report, to the extent that it rebuts Plaintiff's report." (Id.) Plaintiffs respond that damages are a central issue in dispute in this action, and therefore, the subpoenaed documents are relevant. (Document No. 110 at 4.) Plaintiffs explain that Mr. Selby opines that Plaintiffs suffered a several million dollar loss and Defendants' expert, Mr. Roesner, opines that Plaintiffs lost nothing because their business venture would have failed. (Id.) Plaintiffs contend that the subpoenaed documents will show whether or not Defendants profited from the Toyota and Daimler Chrylser franchises, which may disprove Mr. Roesner's testimony regarding the benefit of the lost bargain. (Id. at 4-5.)

Rule 45(d) permits the Court to quash or modify a subpoena under certain circumstances. Fed.R.Civ.P. 45(d)(3)(B). Relevance, however, remains the foundation for any request for production, regardless of the avenue chosen for its request. Rule 45 therefore, codifies the relevancy standards set forth in Rule 26. See Cook v. Howard, 484 Fed. Appx. 805, 812 (4th Cir. Aug. 24, 2012); Schaaf v. SmithKline Beecham Corp., 233 F.R.D. 451, 453 (E.D. N.C. 2005); In Re: C.R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig., 2014 WL 1660386 (S.D. W.Va. Apr. 22, 2014). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . " Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

Plaintiffs alleged in their Complaint that they suffered damages in excess of $2,000,000.00 as a result of the alleged breach of contract, which included but was not limited to their down payment toward the purchase price, their expenses incurred in seeking and securing financing,

4

expenses incurred in seeking approval of their dealership applications to Toyota and Daimler Chrysler, and the present value of Defendants' dealerships or alternatively the lost profit. (Document No. 1 at 8-9.) Plaintiffs' economic expert, Dan Selby, opined on December 30, 2012, that the value of Plaintiffs' lost bargain was in the range of $2,786,081.00 to $3,932,380.00. (Document No. 110, Exhibit 1.) As Mr. Roesner opines that Plaintiffs' venture would have failed, it is clear that the issue of damages is an integral issue to the case, and therefore, the requested financial documents are relevant. To the extent that Defendants challenge any further report from Mr. Selby, they may file the appropriate motion *in limine*.

Defendants argue that the subpoena should be quashed because the requested documents contain trade secrets, commercial information, and confidential financial information. (Document No. 105 at 5-7.) Relying on this District Court's decision in Massey Coal Servs., Inc. v. Victaulic Co. of Am., 249 F.R.D. 477, 482 (S.D. W.Va. 2008), Defendants assert that the financial documents constitute confidential commercial information, which if disclosed, would cause them substantial economic harm. (Id. at 6.) Defendants contend that their corporations are privately held and that the information contained in the documents virtually is non-existent outside of the corporations; only a small number of employees have access to their financial information; that they have taken numerous measures to guard the secrecy of the financial documents; that the information is valuable because it sets forth revenues and expenses and profits and margins, all of which demonstrates Defendants' competitive strategies; that they have paid considerable amounts to accounting firms to develop the information; and that it would be unlawful to obtain the information without Defendants' consent, as it is subject to the accountant-client confidentiality privileges. (Id. at 6-7.)

In response, Plaintiffs assert that the requested documents fail to qualify for trade secret

protection under the holding of Massey Coals Services, and that Defendants previously produced documents that they now contend should be exempt from production. (Document No. 110 at 5.) Plaintiffs further assert that Defendants failed to offer any evidence as to the number of employees who know the contents of the financial documents, the amount paid to Tetrick & Bartlett, PLLC, and the efforts Defendants took to protect the information. (Id. at 6.) Defendants deny having produced previously any of the requested financial documents. (Document No. 111 at 2.)

Rule 45 permits a Court to quash or modify a subpoena if the subpoena requires disclosure of a "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). The subpoenaed party bears the burden of demonstrating that the information is confidential and proprietary. Rule 45(d)(3)(B)(C) nevertheless permits the Court to require production of confidential commercial documents, as an alternative to quashing or modifying a subpoena, if the requesting party "shows a substantial need for the . . . material that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3)(C). The burden shifts to the requesting party to demonstrate that the substantial need cannot be met without undue hardship.

"Confidential commercial information, within the meaning of Fed.R.Civ.P. 45(d)(3)(B)(I) and its counterpart Fed.R.Civ.P. 26(c)(1)(G), is more than just routine business data; instead, it is important proprietary information that provides the business entity with a financial or competitive advantage when it is kept secret, and results in financial or competitive harm when it is released to the public." In re Boston Scientific Corp. Pelvic Repair Sys. Prod. Liab. Litig., 2014 WL 1329944 (S.D. W.Va. Mar. 31, 2014)(M.J. Eifert). In Massey Coal Services, this Court defined confidential commercial information as "information, which if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." Massey Coal

Services, 249 F.R.D. at 482. In determining whether information is to be treated as a trade secret, the Court in Massey Coal Services suggested that the Court consider the factors set forth in the Restatement of Torts:

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and to [its] competitors; (5) the amount of effort or money expended . . . in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Massey Coal Services, 249 F.R.D. at 482.

The subpoenaed documents consist of twelve month end of year financial statements for Ramey Motors, Inc., from 2007 through 2013, and thirteen month financial statements for Ramey Motors, Inc., from 2007 through 2013. (Document No. 101.) Addressing the factors set forth in Massey Coal Services, Defendants indicate that their corporations are privately held and that their financial information is not known outside of the business, with few employees having access to the financial information. (Document No. 105 at 6.) Defendants do not indicate how many employees have access to such information. Defendants further assert that the information sets forth its business strategies. (Id. at 6-7.) Although Defendants indicate that they take measures to protect the secrecy of their financial information and pay considerable sums to accountants to generate the information, they fail to explain how they protect the information or how much they pay to develop the information. Thus, the Court finds that Defendants have failed to meet their burden and that the subpoenaed documents do not constitute trade secrets within the meaning of Rule 45(d)(3). Nevertheless, the Court finds that the documents do constitute sensitive, commercial, financial information which are entitled to protection. Accordingly, in the absence of actual prejudice to

Defendants, the Court holds that the requested financial documents must be produced pursuant to the Subpoena and subject to the terms and conditions set forth in the Protective Order (Document No. 28.), entered on May 2, 2008. Accordingly, it is hereby **ORDERED** that Defendants' Motion to Quash is **DENIED**. It is further **ORDERED** that the documents requested in the Subpoena shall be produced subject to the Protective Order (Document No. 28.), entered on May 2, 2008.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the ruling set forth above on this non-dispositive motion may be contested by filing, within 14 days, objections to this Order with the District Court. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law

The Clerk is requested to send a copy of this Order to counsel of record.

ENTER: December 15, 2014.

R. Clarke VanDervort
United States Magistrate Judge